IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| DEROYALE ARDEANE JOHNSON, <br><br> Plaintiff, <br><br> v. <br><br> SHYLAH RICHINS et al., <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:08-CV-945 CW <br><br> District Judge Clark Waddoups |

Plaintiff, DeRoyale ArDeane Johnson, filed this *pro se* civil rights suit under 42 U.S.C. § 1983 while incarcerated at the Utah State Prison. *See* 42 U.S.C.A. § 1983 (West 2010). Plaintiff was allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915, *see* 28 U.S.C.A. § 1915 (West 2010), and his Complaint was served upon Defendants by the United States Marshals Service. Defendants filed an Answer and a *Martinez* Report addressing Plaintiff's allegations. No additional discovery was conducted. Before the Court is Defendants' Motion for Summary Judgment based on the *Martinez* Report. For the reasons stated below, summary judgment is GRANTED in favor Defendants and the case is dismissed with prejudice.

## ANALYSIS

### I. Background

Plaintiff's Complaint asserts two claims of cruel and unusual punishment under the Eighth Amendment based on alleged withholding of pain medications for chronic hip pain and post-surgical pain. The Complaint also asserts a due process claim under the Fifth and

Fourteenth Amendments based on failure to properly handle Plaintiff's grievances regarding his medications. The only named defendants in the Complaint are Shylah Richins, a medical technician at the Utah State Prison (USP), and Billie Casper, the prison grievance coordinator. Although the Complaint also lists "Does 1-10" as defendants, it does not include specific allegations regarding these individuals. The Complaint seeks compensatory and punitive damages totaling $110,000.00, attorney fees, court costs and "further relief [as] the court deems just and proper."

Defendants move for summary judgment on Plaintiff's medical care claims asserting that Plaintiff has not met his burden of presenting sufficient evidence to show a constitutional violation. Defendants further contend that even if Plaintiff can meet his evidentiary burden, Defendants are entitled to qualified immunity because Plaintiff cannot show that the right at issue was clearly established when the violation occurred. Defendants also assert that Plaintiff's due process allegations are insufficient to state a claim on which relief can be granted.

**II.    Facts**[1]

The record shows that on June 29, 2007, Plaintiff underwent hernia repair surgery and was prescribed Darvocet, a narcotic, for post-operative pain until July 4, 2007. Prior to the hernia surgery Plaintiff was already regularly receiving Neurontin for arthritis pain in his hips. Neurontin is a non-formulary--meaning not generally approved--medication which the prison sometimes prescribes for chronic pain in special circumstances. Like Darvocet, Neurontin is

---

[1] The material facts presented here are drawn from the *Martinez* Report (Dkt. No. 31) and attached Exhibits. Except as noted herein, these facts are undisputed.

valued by inmates for illicit uses and has been traded and bartered among prison inmates. For this reason the prison has policies and procedures for ensuring that inmates do not stockpile such medications.

On July 2, 2007, Plaintiff came to the morning medication distribution, or "pill line," to receive his medications. Pill line is conducted only twice daily, in the morning and evening. Defendant Richins was the medical technician assigned to the pill line that morning. Richins gave Plaintiff two Neurontin and two Darvocet tablets and instructed him to swallow them before she would give him the pills for his noon dose to be taken later by himself. Following prison policies, Richins told Plaintiff to open his mouth and show that he had swallowed the pills. Rather than swallow the pills, Plaintiff attempted to hide them in his mouth--a practice referred to as "cheeking"--while loudly demanding his noon dose. Richins saw the pills on Plaintiff's tongue as he was yelling at her. Richins again ordered Plaintiff to swallow the pills and Plaintiff became more agitated and began shaking his hand at her. Finally, after being ordered to swallow the pills a third time, Plaintiff complied and received his noon dose.

As required under prison policies, Richins immediately reported the incident to a nurse, who in turn relayed the information to the supervising Physician's Assistant (PA), Joe Coombs. Later that day, Coombs discontinued Plaintiff's pain medications altogether. Coombs decision was based on Plaintiff's aggressive behavior toward Richins and concerns that Plaintiff was trying to manipulate staff into giving him unneeded narcotics for illicit purposes. Coombs also considered that Plaintiff's Darvocet prescription was only good for another two and a half days and, if necessary, Plaintiff could make a special request for pain medication using a Health Care

Request form (HCR). Plaintiff was informed at the evening pill line that his pain medications had been discontinued and that he must file an HCR to have them reinstated.

The following day, July 3, 2007, Plaintiff filed an HCR stating that he wanted to see a doctor "concerning the pain in my pelvis area, an operation I had recently, and severe pain in my foot." Plaintiff was examined by PA Terry Jeffries the next business day, July 5th. In addition to requesting reinstatement of his pain medications, Plaintiff complained to Jeffries about abdominal pain, blood in his stool, and increased pain from his surgical incision. Jeffries observed that Plaintiff's abdominal incision was "intact and without erythema [redness]" but noted a small amount of yellowish discharge and a pain response when Plaintiff's abdomen was palpated. Although Jeffries questioned whether the pain response was "real," he referred Plaintiff to the infirmary for antibiotics and to "consider restarting Darvocet for [] post-op[erative] pain after further eval[uation]."

Plaintiff was seen by RN Colleen Guymon at the infirmary after-hours on July 5th. Guymon found no abnormalities in Plaintiff's temperature or vital signs and noted no acute distress. Guymon also collected a stool sample which was normal. Plaintiff was given a laxative, stool-softener and Tylenol. According to his medical records Plaintiff also received a one-time dose of Darvocet while in the infirmary which was verbally authorized by PA Chris Abbott; however, Plaintiff denies this. On July 9, 2007, x-rays were taken of Plaintiff's abdomen which were found to be "unremarkable." The same day Plaintiff submitted an HCR asking to see PA Coombs again "concerning hip and spur on foot . . . [and] [n]eed to be put back on medication." Plaintiff was seen by PA Jeffries on July 13, 2009, who referred Plaintiff to PA

4

Coombs regarding the request for resumption of Neurontin. On July 17, 2007, Plaintiff met with Coombs to discuss resumption of Neurontin. Coombs discussed with Plaintiff the seriousness of the "cheeking" incident and Plaintiff's behavior toward Richins. After receiving assurances from Plaintiff, Coombs reinstated Plaintiff's Neurontin effective that day. Combs declined, however, to renew the Darvocet prescription which had expired almost two weeks earlier.

Plaintiff filed his first written grievance regarding the preceding events on July 10, 2007, asserting racial discrimination and demanding proper medical treatment. After being denied relief, Plaintiff continued to file additional grievances and appeals through November of 2007. Some of Plaintiff's grievances asserted that Defendant Casper, the Inmate Grievance Coordinator, was improperly handling or refusing to timely act on Plaintiff's grievances. Three of Plaintiff's grievances concerning post-operative medical treatment were eventually certified as being fully exhausted in late-November and early-December of 2007. Defendants do not dispute that Plaintiff fully exhausted administrative remedies regarding his medical claims. Plaintiff, however, asserts that the alleged mishandling of his grievances amounts to a separate and distinct constitutional violation.

### III. Legal Standards

#### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment

rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex v. Catrett*, 477 U.S. 317, 324 (1986). Thus, Rule 56(a) of the Federal Rules of Civil Procedure allows a party to move "with or without supporting affidavits for a summary judgment in the party's favor upon all or any part of [a claim]." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp 1100, 1102 (D. Utah 1998).

Once the moving party satisfies its initial burden, "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." *Id.* Federal Rule of Civil Procedure 56(e) requires a nonmovant "that would bear the burden of persuasion at trial" to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998). The specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992). Mere allegations and references to the pleadings will not suffice. The Court must, however, "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir.

1999).

**B.      Qualified Immunity**

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, the Supreme Court has determined that immunity questions should be addressed at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court laid out a two-step process for making qualified immunity determinations. Under *Saucier*, courts were first required to answer the following threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201. If the answer to that question was affirmative, courts next asked "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Id*. More recently, in *Pearson v. Callahan*, 555 U.S. --, 129 S. Ct. 808 (2009), the Supreme Court ruled that the "inflexible" two-step inquiry mandated by *Saucier* is no longer required. Under *Pearson*, courts are now free to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S. Ct. at 818.

## IV. Cruel and Unusual Punishment

### A. Legal Standard for Denial of Medical Care Claims

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104 (quoting *Greg v. Georgia*, 428 U.S. 153 (1976)). "Deliberate indifference involves both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component is met if the deprivation is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). The subjective component is met only if a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Allegations of mere negligence in diagnosing or treating a medical condition, *Estelle*, 429 U.S. at 105, or "inadvertent failure to provide adequate medical care," *Riddle v. Mondragon*, 83 F.3d 1197, 1203 (10th Cir. 1996), are insufficient to state a claim under the Eighth Amendment. "Delay in [providing] medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210. The Tenth Circuit has held that the "substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or

8

considerable pain." *Garrett v. Stratman*, 254 F.3d 949, 950 (10th Cir. 2001).

B. **Objective Component: Serious Medical Need**

Plaintiff has not presented sufficient evidence to satisfy the objective component of the deliberate indifference standard. Although Plaintiff's post-operative care was undoubtedly a serious medical condition mandating treatment, Plaintiff has not shown that the pain he endured from being temporarily denied prescription pain medications was sufficiently severe to implicate constitutional protections.

As an initial matter, Plaintiff does not deny that he received some medications to lessen his pain. Although Plaintiff denies receiving the one-time dose of Darvocet while in the infirmary, he does not deny receiving non-prescription pain relievers such as Tylenol.[2] Moreover, the record shows that medical personnel did not observe any physiological signs or symptoms consistent with Plaintiff's reports of excruciating pain. After examining Plaintiff on July 5th, PA Jeffries questioned whether Plaintiff's reports of pain were "real" but, nevertheless, referred Plaintiff to the infirmary for further examination. Upon reaching the infirmary, Plaintiff told Nurse Guymon that his hip and back pain rated a ten on a ten-point scale while his incision pain was a seven. Guymon conducted a complete physical exam and found that Plaintiff's vital signs were normal, that he was experiencing no acute distress "NAD," and that his demeanor was not consistent with the level of pain he reported. Plaintiff has not offered any evidence to contradict these medical observations.

---

[2] Whether Plaintiff actually received the single dose of Darvocet as ordered is immaterial given the other care he received and the lack of evidence showing deliberate indifference.

Thus, the Court finds that the record does not support the conclusion that Plaintiff's pain was so severe as to constitute a serious medical need under *Farmer*.

C.      **Subjective Component: Deliberate Indifference**

Even assuming that Plaintiff's pain was sufficiently serious to warrant constitutional protection, the record shows that medical personnel were not deliberately indifferent to Plaintiff's condition.

First, regarding Richins, Plaintiff does not offer sufficient evidence to support his allegation that she falsely reported the "cheeking" incident in order to intentionally cause Plaintiff harm. Although Plaintiff disputes Richins' reports that Plaintiff was "cheeking" his medications and becoming aggressive, Plaintiff has not shown that the incident was fabricated. Plaintiff's only support for this claim is his assertion that no formal disciplinary action was ever taken against him and that Richins violated prison policies by reporting the incident directly to medical staff rather than the correctional officer supervising the pill line. These allegations are unavailing, however, because Richins' failure to report the incident to correctional officials provides a reasonable explanation for the lack of formal disciplinary action. Moreover, the failure could just as readily be interpreted as an attempt to spare Plaintiff formal disciplinary sanctions as an attempt to get his prescriptions revoked. Importantly, Richins did not recommend that Plaintiff's medications be discontinued, that decision was made independently by Coombs. Nor did Richins withhold Plaintiff's noon dose, which she easily could have done if her intention was merely to cause Plaintiff suffering. Thus, Plaintiff has not presented sufficient evidence to show deliberate indifference by Richins.

There is also ample evidence showing that Coombs' decision to discontinue Plaintiff's pain medications was based on reasoned medical judgment and valid security concerns rather than an attempt to deliberately cause Plaintiff suffering. Regardless of whether Richins accurately reported the incident, there is no dispute that Coombs' decision to discontinue Plaintiff's medications was precipitated by the alleged cheeking incident. And, there is no evidence that Coombs had reason to believe the incident did not occur as reported by Richins. Based on Richins' report that Plaintiff was attempting to stockpile his medications Coombs could have reasonably concluded that Plaintiff no longer needed them to control his pain and that continuing to provide them might be harmful to Plaintiff or others. Coombs also reasonably believed that if Plaintiff's pain worsened he could obtain timely relief by submitting a health care request. This belief was borne out by Plaintiff's subsequent actions. Moreover, once Coombs resolved his concerns about Plaintiff's alleged stockpiling of medications, Coombs reinstated Plaintiff's Neurontin prescription. Thus, Coombs decision to temporarily discontinue Plaintiff's medication did not show deliberate indifference.

Finally, the record shows that the entire medical staff was solicitous of Plaintiff's needs and made substantial efforts to ensure Plaintiff's well-being. Medical personnel timely responded to Plaintiff's complaints of continuing pain and surgical complications. Plaintiff was promptly examined by Jeffries, who referred him to the infirmary despite concerns that Plaintiff might be exaggerating his symptoms. Once at the infirmary Guymon thoroughly examined Plaintiff after-hours and provided many additional tests and treatments. Regardless of whether his treatment was optimal, the prompt attention Plaintiff received clearly shows that medical staff

were not indifferent to his plight.

Thus, the Court concludes that Plaintiff has not satisfied his burden of showing a genuine issue of material fact as to whether Defendants were deliberately indifferent to Plaintiff's medical needs. Defendants are, therefore, entitled to summary judgment on Plaintiff medical care claims.

### D. Qualified Immunity

Because Plaintiff has not shown that Defendants actions violated the Eighth Amendment, the Court is not compelled to address whether, at the time of the incident, the right at issue here was clearly established for qualified immunity purposes. The Court notes, however, that Plaintiff has not presented any relevant case-law holding that denial of pain medication under circumstances similar to those presented here, and for such a relatively short duration, would amount to cruel and unusual punishment. Thus, even if the Court were to find an Eighth Amendment violation here, Defendants would likely still be entitled to qualified immunity.

## V. Due Process

Plaintiff's Complaint asserts a claim for denial of due process under the Fifth and Fourteenth Amendments based on Defendant Casper's alleged mishandling of Plaintiff's prison grievances. This claim is entirely without legal merit.

The Tenth Circuit has determined that prison grievance procedures do not create a protected liberty interest and, therefore, do not implicate a prisoner's due process rights. *See Murray v. Albany County Bd. of County Comm'rs*, No. 99-8025, 2000 WL 472842, at *2 (10th Cir. Apr. 20, 2000) (unpublished op.) ("[P]rison grievance procedures do not 'give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth

amendment.' ") (quoting *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)); *Anderson v. Colorado Dep't of Corrections*, No. 98-1477, 1999 WL 387163, at *2 (10th Cir. June 14, 1999) (unpublished op.) (holding that a state inmate's § 1983 "allegations relating to the requirements of the Department of Corrections grievance procedure do not support a due process claim because those procedures do not create any liberty interest in the incarcerated petitioner"). Thus, Plaintiff's allegations of interference with the grievance process are insufficient to state a federal due process claim.

Although, in theory, a prison official's failure to follow prison grievance procedures could result in interference with an inmate's constitutional right of access to the courts, *see Penrod v. Zavaras*, 94 F.3d 1399, 1404-05 (10th Cir. 1996), there has clearly been no such interference here. Plaintiff's grievance records show that Plaintiff was not hindered from pursuing his present legal claims in any significant way. In fact, despite any alleged irregularities in the grievance process, Plaintiff ultimately received a response to his Level 3 grievance appeal stating that all available prison remedies had been exhausted and Plaintiff was free to seek judicial relief. Moreover, the Complaint reveals that Plaintiff received assistance from the prison contract attorneys with filing this suit in a timely manner. Thus, Plaintiff cannot state a claim for denial of access to the courts based on the problems he alleges with the prison grievance process.

Because Plaintiff's allegations regarding the grievance system are insufficient to state a due process or legal access claim the Court concludes that Defendants are entitled to summary judgment on Count Three of Plaintiff's Complaint.

**ORDER**

Based on the forgoing analysis, **IT IS HEREBY ORDERED** that:

(1) Defendant's Motion for Summary Judgment (Dkt. No. 43) is **GRANTED**;

(2) Plaintiff's Motion for Summary Judgment (Dkt. No. 51) is **DENIED**; and,

(2) this case is **CLOSED**.

DATED this 9th day of August, 2010.

BY THE COURT:

_____
CLARK WADDOUPS
United States District Judge